EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Asociación Puertorriqueña de la Judicatura, Inc.; Hon. Felipe Rivera Colón y Hon. Eric R. Ronda Del Toro, Jueces de Apelaciones<br><br>Peticionarios<br><br>v.<br><br>Gobierno de Puerto Rico (Estado Libre Asociado de Puerto Rico) representado por su Secretaria de Justicia y la Oficina de Administración de Tribunales (OAT) representado por el Director Administrativo de Tribunales<br><br>Recurridos | Certiorari<br><br>2026 TSPR 62<br><br>218 DPR ___ |

Número del Caso: AC-2026-0031

Fecha: 8 de junio de 2026

Tribunal de Apelaciones:

    Panel XI

Representante legal de la parte peticionaria:

    Lcdo. Francisco J. Amundaray

Representantes legales de la parte recurrida:

    Lcdo. Juan A. Marqués Díaz
    Lcda. Angélica Rivera Ramos

Materia: Resolución de Sala Especial de Despacho con Voto particular de conformidad.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

INTEGRACIÓN DE SALA ESPECIAL

ORDEN

En San Juan, Puerto Rico, a 22 de mayo de 2026.

Debido a que la Jueza Asociada señora Pabón Charneco no interviene, se constituye una Sala Especial de Despacho integrada por la Jueza Presidenta Oronoz Rodríguez, el Juez Asociado señor Estrella Martínez y el Juez Asociado señor Candelario López para atender el caso AC-2026-0031, Asociación Puertorriqueña de la Judicatura, Inc. y otros v. Gobierno de Puerto Rico (Estado Libre Asociado de Puerto Rico) y otros.

Lo decretó y firma,

Maite D. Oronoz Rodríguez
Jueza Presidenta

CERTIFICO:

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Asociación Puertorriqueña de la Judicatura, Inc.; Hon Felipe Rivera Colón y Hon. Eric R. Ronda Del Toro, Jueces de Apelaciones<br><br>Peticionarios<br><br>v.<br><br>Gobierno de Puerto Rico (Estado Libre Asociado de Puerto Rico) representado por su Secretaria de Justicia y la Oficina de Administración de Tribunales (OAT) representado por el Director Administrativo de Tribunales<br><br>Recurridos | AC-2026-0031 |

Sala Especial de Despacho integrada por la Jueza Presidenta Oronoz Rodríguez como su Presidenta, el Juez Asociado señor Estrella Martínez y el Juez Asociado señor Candelario López

RESOLUCIÓN

En San Juan, Puerto Rico, a 8 de junio de 2026.

Atendido el escrito presentado como una petición de certiorari, por ser el recurso apropiado, no ha lugar.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez emitió un Voto particular de conformidad al cual se unió el Juez Asociado señor Candelario López. El Juez Asociado señor Candelario López emite la siguiente expresión de conformidad, a la cual se unió el Juez Asociado señor Estrella Martínez:

> "Me uno al *Voto particular de conformidad* emitido por el compañero Juez Asociado señor Estrella Martínez pues entiendo, como él, que aunque el resultado desestimatorio alcanzado por los foros inferiores es el correcto, el razonamiento empleado para alcanzarlo no lo es. Como establece la ponencia, en este caso no estamos ante una cuestión política, sino ante un ejercicio de interpretación de una cláusula constitucional para el cual existen normas judiciales apropiadas, que no conlleva como resultado la usurpación de facultades expresamente delegadas a

la rama legislativa. Aunque reconozco una vocación admirable en el deseo de los peticionarios de continuar sirviendo desde una posición que ha sido descrita en el pasado --con razón-- como una especie de sacerdocio, establecer en nuestra Constitución una edad de retiro obligatoria para nuestros jueces y juezas obedeció a un interés legítimo de garantizar la competencia de aquellos y aquellas sobre quienes recae la función adjudicativa.

Al así concluir, tomo nota del desafortunado pero innegable hecho de que las facultades físicas y mentales merman con el paso del tiempo. Aunque comprendo el reclamo de los peticionarios de que su partida obligada no responde a un juicio sobre su capacidad individual, es incuestionable que estamos ante una política constitucionalmente válida: así lo reconocían las constituciones de al menos seis estados de los Estados Unidos al momento en que se aprobó nuestra Constitución en 1952, y treinta y uno actualmente.[1]

Invita a la reflexión, sin embargo, el notable cambio de circunstancias que el pasar del tiempo ha impuesto desde entonces. No debe considerarse ajeno a la realidad que la expectativa de vida en Puerto Rico ha aumentado considerablemente, y tampoco que hoy, a los setenta años, muchas personas continúan en el cenit de su productividad profesional. En ese contexto, no estamos ante un reclamo abstracto o descarnado: se trata de dos servidores públicos en plena posesión de sus facultades intelectuales y judiciales, quienes han consagrado décadas al servicio de la justicia. No obstante, correspondería al Poder Legislativo, de entenderlo procedente, encausar los mecanismos constitucionales que permitirían atender cualquier propuesta de cambio, y al pueblo de Puerto Rico refrendarlo en las urnas".

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

---

[1] Véase A. Fernós Isern, *Original Intent in the Constitution of Puerto Rico, Notes and Comments Submitted to the Congress of the United States*, 2da ed., San Juan, Lexis-Nexis de Puerto Rico, 2002, pág. 95.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |
|---|---|
| Asociación Puertorriqueña de la Judicatura, Inc.; Hon. Felipe Rivera Colón y Hon. Eric R. Ronda Del Toro, Jueces de Apelaciones<br><br>Peticionarios<br><br>v.<br><br>Gobierno de Puerto Rico (Estado Libre Asociado de Puerto Rico) representado por su Secretaria de Justicia, y la Oficina de Administración de Tribunales (OAT) representado por el Director Administrativo de Tribunales<br><br>Recurridos | AC-2026-0031 |

Voto particular de conformidad emitido por el Juez Asociado Señor ESTRELLA MARTÍNEZ, al cual se une el Juez Asociado Señor CANDELARIO LÓPEZ.

En San Juan, Puerto Rico, a 8 de junio de 2026.

Aunque estoy conforme con el dictamen al cual arribaron los foros recurridos, respetuosamente considero que los fundamentos de falta de justiciabilidad que sustentan ese resultado no son correctos. Por el contrario, estamos ante una controversia constitucional justiciable en la que los fundamentos sustantivos aplicables nos conducen a concluir que los peticionarios no tienen razón en los méritos.

En ese extremo, a diferencia de lo resuelto por el Tribunal de Apelaciones y el Tribunal de Primera Instancia,

soy del criterio de que este caso es enteramente justiciable. Primero, porque los reclamantes poseen legitimación activa. Segundo, porque la controversia está madura para adjudicación. Tercero, porque no estamos ante una cuestión política que impida la consideración judicial.

Por ese motivo, aunque la revisión se da contra el resultado y no sus fundamentos, consigno en este Voto particular las razones que obligan a concluir que la disposición constitucional sobre la edad de retiro obligatorio de los jueces y las juezas de Puerto Rico es válida y enteramente operante.

En adelante, particularizo las razones que inspiran esta perspectiva, no sin antes repasar las posiciones de las partes y las conclusiones de los foros recurridos.

I

La *Demanda* en este caso fue promovida por la Asociación Puertorriqueña de la Judicatura, el juez Hon. Eric R. Ronda Del Toro[2] (Hon. Ronda Del Toro) y el entonces juez, el Lcdo. Felipe Rivera Colón [3] (licenciado Rivera Colón) (en conjunto, parte peticionaria), para obtener: (1) un *injunction* preliminar que le impidiera a la Oficina de Administración de los Tribunales (OAT) obligar a los jueces

---

[2] El Hon. Ronda Del Toro ha ocupado el puesto desde diciembre de 2020 y cumplirá 70 años en enero de 2027.

[3] El licenciado Rivera Colón fungió como juez del Tribunal de Apelaciones continuamente desde el 2010 hasta que cumplió 70 años en mayo de 2026.

a retirarse al cumplir 70 años; y (2) una sentencia declaratoria en la que, al amparo de la Constitución de los Estados Unidos, se declarara inconstitucional la disposición de la Constitución de Puerto Rico que dispone la edad obligatoria para el retiro de los jueces y las juezas.

Para la parte peticionaria, el límite máximo de edad impuesto a los jueces y las juezas por el Artículo V, Sección 10 de la Constitución de Puerto Rico, Const. PR, LPRA, Tomo 1, violenta la igual protección de las leyes garantizada bajo la Decimocuarta Enmienda de la Constitución de Estados Unidos, Const. EE. UU., LPRA, Tomo 1, y contraviene la ley federal *Age Discrimination in Employment Act* (ADEA), 29 USCA sec. 621 *et seq.*

Más prominentemente, en sus múltiples comparecencias, la parte peticionaria esbozó la teoría de que la ley federal *Puerto Rico Oversight, Management, and Economic Stability Act* (PROMESA), las acciones de la Junta de Supervisión Fiscal y el caso *Commonwealth of Puerto Rico v. Sánchez Valle*, 579 US 59 (2016), dejaron sin efecto aquella parte del Artículo V, Sección 10 de la Constitución de Puerto Rico que requiere que la Asamblea Legislativa establezca un sistema de retiro para los jueces y las juezas y, por lo tanto, procedía que también se invalidara el resto de la cláusula que hacía obligatorio el retiro de los jueces y las juezas al cumplir los 70 años de edad.

Al igual, la parte peticionaria adujo que esta controversia es distinguible de aquella atendida en el caso *Gregory v. Ashcroft*, 501 US 452 (1991), donde el Tribunal Supremo federal validó la misma edad de retiro obligatorio, dispuesta en la constitución de Missouri, porque no violentaba la Decimocuarta Enmienda de la Constitución de Estados Unidos ni la ley federal ADEA. Según su posición, ese caso, así como otros similares, involucraba una impugnación a la constitución de un estado de la Unión que, a diferencia del territorio de Puerto Rico, ostentaba soberanía propia.

Tanto el Gobierno de Puerto Rico como la OAT se opusieron a la posición de la parte peticionaria y solicitaron la desestimación del pleito. Principalmente, sostuvieron que la controversia no era justiciable. Por un lado, el Estado planteó que la *Demanda* versaba sobre una cuestión política no susceptible de adjudicación porque enmendar o alterar la Constitución de Puerto Rico es una tarea que le compete exclusivamente a la Asamblea Legislativa. Al mismo tiempo, adujo que la parte peticionaria carecía de legitimación activa ya que no alegó un daño claro, inmediato y particularizado, sino uno general compartido por todos los jueces y las juezas de nuestra jurisdicción local. Además, argumentó que la controversia no estaba madura porque los hechos alegados

demostraban una situación futura y lejana, pues los reclamantes aún no habían cumplido los 70 años.

Entretanto, en los méritos, el Gobierno enfatizó que la Convención Constituyente adoptó la edad de retiro compulsorio de jueces y juezas luego de sopesar las ventajas y desventajas entre el retiro voluntario y el compulsorio. Por el mismo camino, aseveró que aplicaba el caso *Gregory v. Ashcroft*, *supra*, y por ello la cláusula constitucional en cuestión no violentaba la Decimocuarta Enmienda de la Constitución federal ni la ley ADEA. Respecto a esto último, recalcó que, de todas maneras, la ley ADEA no es aplicable a los jueces y las juezas de Puerto Rico.

Por otro lado, la OAT coincidió, a grandes rasgos, con la posición del Gobierno.[4] Incluso, añadió que, en todo caso, los jueces reclamantes aceptaron sus cargos libre y voluntariamente y, así, asumieron el daño por el cual demandaron.

Trabadas sendas solicitudes desestimatorias de las partes demandadas, el Tribunal de Primera Instancia celebró una vista argumentativa y, sometido el caso, las declaró ha lugar. Para el foro primario, no se presentó una controversia justiciable, sino una cuestión política. A su

---

[4] En particular, la OAT reiteró lo discutido por el Estado sobre la cuestión política; la falta de legitimación activa; la validez constitucional del retiro obligatorio de los jueces y las juezas; la razonabilidad del límite de edad; la aplicabilidad del caso *Gregory v. Ashcroft*, *supra*; y la inaplicabilidad de la ley federal ADEA.

entender, la parte peticionaria solicitó alterar el texto constitucional mediante la eliminación de uno de sus articulados, lo cual le compete a la Asamblea Legislativa en su facultad de proponer enmiendas constitucionales.

Por otra parte, el foro primario reconoció que era fácil constatar la legitimación activa de los jueces reclamantes, pues estaban sujetos al Artículo V, Sección 10 de la Constitución de Puerto Rico. Pese a ello, destacó la situación del licenciado Rivera Colón, quien, al cumplir los 70 años en mayo de 2026, "se ubica[ba] de forma más precisa dentro de los linderos de un daño claro y palpable, así como de la conexión necesaria entre ese daño alegado y la causa de acción ejercitada".[5] Asimismo, acentuó que este también satisfacía la doctrina de madurez porque la inminencia del perjuicio que sufriría al cumplir la edad límite de retiro justificaba la intervención judicial. Nada específico dispuso sobre el Hon. Ronda Del Toro.

Inconforme, la parte peticionaria acudió al Tribunal de Apelaciones. Reiterados los planteamientos de cada parte, el foro intermedio modificó el dictamen del Tribunal de Primera Instancia a los únicos efectos de expresamente reconocerle legitimación activa al Hon. Ronda Del Toro. Así modificada, confirmó la *Sentencia* apelada. En lo demás, coincidió con el foro primario.

---

[5] Véase Apéndice del *Recurso de Apelación*, pág. 133.

II

Visto lo anterior, mi criterio lleva al mismo resultado al que llegaron los foros recurridos, aunque por fundamentos distintos. En consecuencia, además de reafirmar que tanto el Hon. Ronda Del Toro como el licenciado Rivera Colón tenían legitimación activa para reclamar en este caso, consigno también que no estamos ante una cuestión política, sino frente a un asunto susceptible de adjudicación en nuestra tarea y función judicial de ser los máximos intérpretes de la Constitución de Puerto Rico.

Por ello, estimo que el Artículo V, Sección 10 de la Constitución de Puerto Rico es válido y opera como límite de edad de retiro para los jueces y las juezas de nuestra jurisdicción. Esto, pues no representa una violación a la igual protección de las leyes, según es garantizada por la Decimocuarta Enmienda de la Constitución de los Estados Unidos, y no contraviene la ley federal ADEA porque esta no es aplicable a los jueces y juezas de Puerto Rico. En efecto, la edad en esta ocasión no representa una clasificación sospechosa y, bajo el crisol del escrutinio racional aplicable, el retiro obligatorio a los 70 años representa una actuación razonable de la Convención Constituyente, guiada por un interés legítimo, inclusive importante, de asegurar una judicatura capaz de cumplir con las exigencias de su cargo. No menos importante, no

contraviene las normas invocadas por los peticionarios, con las cuales pretendían menguar su vigencia. Veamos.

### A. Los reclamantes poseen legitimación activa

Al momento en que se presentó la *Demanda* en este caso, el licenciado Rivera Colón fungía como juez del Tribunal de Apelaciones, tenía 68 años y alcanzaría los 70 años en mayo de 2026. Mientras tanto, el Hon. Ronda Del Toro también ostentaba el puesto de juez en el foro intermedio, tenía 68 años y cumpliría los 70 años en enero de 2027. Como bien estimó el Tribunal de Primera Instancia, "el simple hecho de que los demandantes ocupen un cargo en la judicatura facilita la constatación de su legitimación activa, ya que, como es obvio, están sujetos al Art. V, Sec. 10 de la Constitución de Puerto Rico".[6]

Recordemos que, a partir del principio de la justiciabilidad, se ha desarrollado la legitimación activa como una de las doctrinas de autolimitación judicial. *DACO v. LUMA y otros*, 2025 TSPR 126, 217 DPR ___ (2025) (Opinión de conformidad emitida por el Juez Asociado señor Estrella Martínez). Mediante ella, se ha buscado que un pleito sea tramitado por aquella parte que por ley tiene el derecho que reclama. Íd. Ahora bien, en el pasado he recalcado que esta norma es de origen judicial, que su aplicación responde a la prudencia y, sobre todo, que la Constitución de Puerto Rico no tiene un requisito de caso y controversia, lo cual

---

[6] Íd., pág. 133.

debe tomarse en cuenta al evaluar su aplicación a la luz del acceso efectivo a la justicia por las personas litigantes. Íd.; *B. Billboard BG v. Out of Home Media*, 213 DPR 1076, 1082 (2024) (Voto particular disidente del Juez Asociado señor Estrella Martínez); *Amadeo Ocasio et al. v. Gobernador et al.,* 211 DPR 278, 320 (2023) (Opinión de conformidad del Juez Asociado señor Estrella Martínez).

De todas formas, de entre las dos (2) vertientes reconocidas de legitimación activa, la aplicable en este caso es la tradicional u ordinaria. Esta requiere que una parte demandante demuestre que: (1) ha sufrido un daño claro y palpable; (2) el daño es real, inmediato y preciso, no abstracto o hipotético; (3) existe una relación causal razonable entre la acción que se ejercita y el daño alegado; y (4) la causa de acción surge al palio de la Constitución o de alguna ley. *Fund. Surfrider y otros v. A.R.Pe.,* 178 DPR 563, 572 (2010); *Hernández Torres v. Gobernador,* 129 DPR 824, 836 (1992); *Hernández Agosto v. Romero Barceló*, 112 DPR 407, 414 (1982).

Ciertamente, en este pleito la parte peticionaria estaba compuesta por dos (2) personas que, por el carácter de su empleo como jueces del Tribunal de Apelaciones, estaban expuestas a ser obligadas a retirarse tan pronto cumplieran 70 años, lo cual era una condición futura que, ausente un evento desafortunado, era lo suficientemente

cierta, no abstracta y no hipotética.[7] Igualmente, la presentación de la reclamación estaba estrechamente relacionada con el daño alegado, toda vez que buscaba prevenir que se efectuara el retiro obligatorio. Por último, la causa de acción surgió al palio de la Constitución de los Estados Unidos y la ley federal ADEA.

En este sentido, así como coligió generalmente el Tribunal de Primera Instancia, ambos reclamantes tenían legitimación activa para demandar por su condición de jueces del Tribunal de Apelaciones próximos a cumplir los 70 años. Por un lado, el foro primario optó por resaltar específicamente que el daño alegado por el licenciado Rivera Colón se situaba con mayor precisión dentro de los linderos de la legitimación activa. Por el otro, el foro intermedio entendió menester reconocer de forma expresa que

---

[7] Contrario a lo planteado por el Gobierno, el hecho de que las partes compartieran el daño alegado con el resto de los jueces y las juezas del Tribunal General de Justicia no lo convierte en un daño generalizado y no particular. En este contexto, se entiende por "particular" que el daño afecte a la parte reclamante de manera personal e individual. *Lujan v. Defenders of Wildlife,* 504 US 555, esc. 1 (1992). Particular no es igual a exclusivo. La idea es asegurar que quien promueve la acción tiene un interés de tal magnitud que, con toda probabilidad, la litigará vigorosamente. *Hernández Torres v. Hernández Colón et al.,* 129 DPR 824, 835 (1992).

Exponerse a no poder ejercer el puesto judicial que se ostenta es, precisamente, el tipo de daño alegado que afecta personalmente a los jueces reclamantes en este caso. Lo contrario impediría reclamar por daños o controversias que presuntamente le perjudican a una persona cuando también afectan a una multiplicidad de personas.

el Hon. Ronda Del Toro también poseía legitimación activa. Al así actuar, no erraron.[8]

### B. No estamos ante una cuestión política

Superado ese escollo, tan solo resta evaluar si estamos ante una cuestión política, tal y como resolvieron los foros recurridos. En este respecto, la siguiente expresión del Tribunal de Primera Instancia recoge su razonamiento:

> […] lo que aquí se solicita, que no es otra cosa que alterar el texto constitucional al eliminar uno de sus articulados, es un asunto que corresponde a la esfera encargada de formular política pública, entiéndase la Asamblea Legislativa. Correspondería a dicho cuerpo, de estimarlo procedente, ejercer la facultad que le confiere la Constitución de Puerto Rico para proponer enmiendas o llevar a cabo su revisión.[9]

Por su parte, el Tribunal de Apelaciones coincidió:

> […] le corresponde a la Asamblea Legislativa, y solamente a ella, el proponer una enmienda a nuestra Constitución que deje sin efecto el retiro obligatorio de los jueces a los 70 años,

---

[8] Similarmente, el Tribunal de Primera Instancia razonó que se cumplía el requisito de madurez. Recordemos que la madurez, al contemplar la proximidad temporal del daño alegado, requiere examinar si la controversia sustantiva es apropiada de resolución judicial y si el daño es suficiente para requerir adjudicación. *Romero Barceló v. E.L.A.,* 169 DPR 460, 475 (2006). En esencia, "[t]odo lo que se necesita para asegurar que un caso está maduro es que el evento contemplado […] con toda probabilidad va a ocurrir". Íd., citando a *Com. de la Mujer v. Srio. de Justicia*, 109 DPR 715, 723 esc. 8 (1980).

En vista de ello y por el mismo motivo por el cual considero que el Hon. Ronda Del Toro y el licenciado Rivera Colón tienen legitimación activa, estimo que el caso está maduro para la adjudicación.

[9] Apéndice del *Recurso de Apelación*, pág. 133.

> si así lo entendiera necesario. Había cuenta de que el remedio que [la parte peticionaria solicitó] en su *Demanda* persigue eliminar tal disposición, no es a los tribunales a quienes corresponde mediante un dictamen judicial hacerlo. Como correctamente dictaminó el TPI, la controversia planteada se trata de una cuestión política que no es justiciable.[10]

Con mucho respeto, mi posición es que esa apreciación es errónea.

Consideremos, pues, que la cuestión política es otra doctrina que traza su origen en el principio de justiciabilidad. A esos efectos, hemos considerado que existe una cuestión política, no adjudicable por los tribunales, cuando está presente: (1) una delegación expresa del asunto en controversia a otra rama del Gobierno; (2) una ausencia de criterios o normas judiciales apropiadas para resolver la controversia; (3) una imposibilidad de decidir sin hacer una determinación inicial de política pública que no le corresponde a los tribunales; (4) una imposibilidad de tomar una decisión sin expresar una falta de respeto hacia otra rama de gobierno; (5) una necesidad poco usual de adherirse, sin cuestionar, a una decisión política tomada previamente; y (6) un potencial de confusión proveniente de pronunciamientos múltiples de varios departamentos del Gobierno sobre un punto. *Noriega Rodríguez v. Jarabo*, 136 DPR 497, 509 (1994). Ninguna de esas circunstancias está presente aquí.

---

[10] Íd., pág. 21.

En primer orden, no estamos ante una delegación expresa a otra rama del Estado. Si bien el Artículo VII, Sección 1 de la Constitución de Puerto Rico le confiere a la Asamblea Legislativa el poder de proponer enmiendas a ese documento, la interpretación constitucional y las leyes de Puerto Rico recae en el Poder Judicial con el Tribunal Supremo como el tribunal de última instancia. Const. PR, *supra*, Art. VII, Sec. 1 y 3. Lo que se solicita en este caso no es una enmienda o una alteración formal a la Constitución, sino que se pide una interpretación de la cláusula constitucional en controversia y contrastarla con las normas que invocan los peticionarios para determinar si alguna de ellas tiene preeminencia. Ese petitorio, aunque su conclusión resulte improcedente como cuestión de derecho, no está fuera del ámbito de acción de los tribunales y, sobre todo, del más alto foro local. Nuestro poder y nuestra responsabilidad como Tribunal Supremo comprenden la función de ser, precisamente, los máximos intérpretes de la Constitución y las leyes de Puerto Rico.[11]

En segundo orden, tampoco existe una carencia de criterios apropiados para resolver la controversia. Tanto la Decimocuarta Enmienda de la Constitución de los Estados Unidos como la jurisprudencia federal y local que interpretan esa disposición, así como la ley federal ADEA,

---

[11] Véanse *Senado de PR v. ELA*, 203 DPR 62 (2019); *Noriega v. Hernández Colón*, 135 DPR 406 (1994); *Santa Aponte v. Srio. del Senado*, 105 DPR 750 (1977).

presentan una multiplicidad de normas judiciales para atender esta controversia. Entre ellas, primordialmente, el análisis que realizó el Tribunal Supremo federal en *Gregory v. Ashcroft*, *supra*, representa la principal guía para examinar la validez de la disposición constitucional del retiro obligatorio de jueces y juezas. Adviértase que ni el estado de Missouri ni mucho menos el Tribunal Supremo federal se escudó en la doctrina de cuestión política para evitar resolver en los méritos la controversia constitucional.

En tercer orden, por esa misma vía, no existe una imposibilidad de decidir sin realizar una determinación inicial de política pública que no nos corresponde como tribunal, ni una posibilidad de expresarnos sin faltar el respeto hacia otra rama de gobierno y sus funciones particulares. Fueron los miembros de la Convención Constituyente quienes hicieron la determinación inicial de política pública que nos tocaría interpretar.[12] Al así

---

[12] 3 Diario de Sesiones de la Convención Constituyente, 1678 (1961). Debe notarse que, al momento de adoptarse el lenguaje que forma parte del Artículo V, Sección 10 de la Constitución de Puerto Rico, no hubo debate específico sobre la edad de retiro obligatorio de jueces y juezas. Sin embargo, la Convención Constituyente tenía a su haber la propuesta de la Escuela de Administración Pública de la UPR la cual recomendaba situar la edad de retiro en 75 años, y el insumo de la Comisión de la Rama Judicial, la cual se rehusó a sugerir el retiro obligatorio de la magistratura. J. Trías Monge, *Historia Constitucional de Puerto Rico*, San Juan, Ed. UPR, 1982, Vol. III, pág. 103.

hacerlo, contaron con la cabal propuesta de la Escuela de
Administración Pública de la Universidad de Puerto Rico
(Escuela de Administración Pública de la UPR) de fijar en
75 años la edad de retiro obligatorio de jueces y juezas,
motivada en "proteger al público contra los jueces que
mental o físicamente lleguen a ser incapaces para el
cumplimiento de sus deberes" y, a la vez, hacer justicia a
aquellos y aquellas "que reúnan las condiciones necesarias
para mantenerse en servicio activo".[13] En este contexto, la

---

Igualmente, para ese tiempo, como remarca Trías Monge, al menos cuatro (4) constituciones estatales incluían una edad de retiro de 70 años y otras dos (2) imponían una edad mayor. Íd.; Véase también *Notes and Comments on the Constitution of the Commonwealth of Puerto Rico*, Washington D.C., 1952, págs. 95-96, notas 19 y 20.

Por todo ello, es de singular importancia que se haya adoptado sin debate la propuesta del delegado Antonio Reyes Delgado para proponer una edad incluso menor a la sugerida por la Escuela de Administración Pública de la UPR y fijada por dos (2) estados, e igual a la de otros cuatro (4) estados.

[13] Escuela de Administración Pública de la UPR, *La nueva Constitución de Puerto Rico*, San Juan, Ed. UPR, (ed. facsimilar) 2008, págs. 492-494. En su propuesta, la Escuela de Administración Pública de la UPR examinó: los requisitos similares existentes en otros estados de la Unión; si era mejor un sistema voluntario o uno obligatorio; si el retiro debía implicar la separación completa del servicio judicial; y qué edad podía considerarse apropiada para el retiro. Sobre esto último, propuso los 75 años, en vista de que las estadísticas demográficas indicaban que el promedio de vida era 70 años.

En torno a esta propuesta, cabe resaltar un comentario realizado por la Escuela de Administración Pública de la UPR: "[s]i se arguye que este método [el retiro obligatorio a los 75 años] podría privar a la comunidad del servicio de grandes juristas, la respuesta más sencilla es que la corte no es el único lugar en el cual se pueden utilizar

pauta a seguir fue dictada por ese ejercicio democrático de autogobierno, iniciado por la Convención Constituyente y ratificado por el verdadero soberano, el Pueblo.

En cuarto orden, por último en este tema, no se presenta la necesidad de adherirnos a una decisión política previa ni existe un potencial de confusión ante pronunciamientos de distintos departamentos del Estado sobre este asunto. La controversia presentada es puntual e, incluso, salvo las leyes adoptadas por la Asamblea Legislativa o los planes de ajuste aprobados por la Junta de Supervisión Fiscal sobre el sistema de retiro de jueces y juezas, no tenemos acciones o manifestaciones encontradas respecto a la <u>edad de retiro obligatorio</u> de los jueces y juezas.

### C. La edad de retiro obligatorio para los jueces y las juezas es una disposición constitucional válida

Con origen en las consideraciones recién discutidas, el Artículo V, Sección 10 de la Constitución de Puerto Rico establece concretamente: "[l]a Asamblea Legislativa establecerá un sistema de retiro para los jueces, retiro que será obligatorio cuando hubieren cumplido setenta años de edad". Const. PR, *supra*, Art. V, Sec. 10. Así, obliga a

---

los servicios de tales hombres [y mujeres]". Escuela de Administración Pública de la UPR, *op. cit.*, pág. 494. Por eso, consideró como posibilidad adoptar un plan que permitiera solicitarles a jueces retirados que prestaran servicio de forma que se garantizara el empleo de esas personas que conservan su eficiencia más allá de la edad de retiro. Íd.

que los jueces y las juezas de nuestro Tribunal General de Justicia, desde el Tribunal de Primera Instancia hasta el Tribunal Supremo, se retiren tan pronto cumplan los 70 años, independientemente del término de nombramiento que les quede por extinguir.

Si bien no es el único ni el más reiterado argumento de la parte peticionaria, sí merece principal atención su tesis sobre la invalidez de la edad de retiro obligatorio al amparo de la Decimocuarta Enmienda de la Constitución de los Estados Unidos y la ley federal ADEA. Desafortunadamente para la parte peticionaria, ese preciso argumento fue rechazado por el Tribunal Supremo federal en *Gregory v. Ashcroft*, *supra*.

En aquella ocasión, el más alto foro federal correctamente rechazó la impugnación de una edad de retiro obligatorio para jueces y juezas, contenida en la Constitución de Missouri. Para este, según la Décima Enmienda de la Constitución de los Estados Unidos, los estados conservaban su derecho de definir las cualificaciones de los funcionarios locales de mayor jerarquía. Al fijar la edad obligatoria para el retiro de los jueces y las juezas de su jurisdicción, una disposición a tales efectos no violentaba la igual protección de las leyes, ni contravenía la ley federal ADEA contra el discrimen por edad. Primero, porque existía un nexo racional entre el requisito de retiro obligatorio y el

propósito de Missouri de garantizar jueces y juezas competentes. Al respecto, coligió que el límite de edad no era irracional, pues existía una conexión entre superar los 70 años y la disminución en capacidades mentales y físicas.[14] Incluso, clasificó el interés declarado de mantener una judicatura totalmente capaz de realizar las exigentes tareas que un juez o una jueza debe completar como uno legítimo e, incluso, apremiante. *Gregory v. Ashcroft*, *supra*, pág. 472.

Segundo, el Tribunal Supremo federal concluyó que la ley federal ADEA tampoco aplicaba a los jueces y las juezas estatales porque ese estatuto excluía a funcionarios con tareas de fijar política pública.

La lógica de *Gregory v. Ashcroft*, *supra*, es totalmente aplicable al Artículo V, Sección 10 de la Constitución de Puerto Rico. Sobre todo, tomando en cuenta las

---

[14] En una expresión que comparte este servidor, el Tribunal Supremo federal también reconoció que no es cierto que todos los jueces y las juezas sufran un deterioro significante en su desempeño al cumplir 70 años. En concreto, plasmó: "The Missouri mandatory retirement provision, like all legal classifications, is founded on a generalization. It is far from true that all judges suffer significant deterioration in performance at age 70. It is probably not true that most do. It may not be true at all". *Gregory v. Ashcroft*, *supra*, pág. 473. Sin embargo, también precisó que un estado no violenta la igual protección de las leyes meramente porque la clasificación sea imperfecta. Íd., citando a *Massachusetts Bd. of Retirement v. Murgia*, 427 US 307, 316 (1976). Lo importante para revocar es que el tribunal se convenza de que los hechos que motivan la clasificación no podrían ser razonablemente concebidos como ciertos por quien la estableció. Íd., citando a *Vance v. Bradley*, 440 US 93, 111 (1979).

consideraciones adicionales que tuvo disponible la Convención Constituyente, queda claro que el límite de edad máximo impuesto a los jueces y juezas de nuestra jurisdicción responde a un motivo protector ante el presunto deterioro sufrido al superar los 70 años. Como es sabido, especialmente en este contexto, la edad, más aún la de jueces y juezas, no es una clasificación sospechosa porque no representa una clase de individuos que haya sido históricamente sujeta a discriminación. Estos y estas tampoco tienen un derecho fundamental al puesto que ostentan.

Por ello, en virtud de las normas que hemos adoptado respecto a las clasificaciones que no son sospechosas, corresponde examinar la disposición constitucional bajo un escrutinio racional. Conforme a este, la disposición impugnada se presume válida y no debe ser revocada a menos que se pruebe que no responde a un interés legítimo del Estado y que no está racionalmente vinculado a este. *Berberena v. Echegoyen*, 128 DPR 864, 878-880 (1991); *Zachry International v. Tribunal Superior*, 104 DPR 267, 277 (1975). En otras palabras, debe existir un nexo racional entre los medios empleados por el estatuto y el interés legítimo del Estado que los motiva. *Berberena v. Echegoyen*, *supra*; *Zachry International v. Tribunal Superior*, *supra*.

En este asunto, fijar el límite máximo de edad para los jueces y las juezas de Puerto Rico es una disposición

que está vinculada racional y razonablemente al interés legítimo de garantizar jueces y juezas lo suficientemente competentes y capaces para efectuar la labor de adjudicar. Si bien la expectativa de vida ha aumentado desde que se aprobó la Constitución de Puerto Rico y no todas las personas sufren el mismo deterioro físico o mental a partir de los 70 años, el interés legítimo está en evitar el riesgo incrementado de deterioro, tal y como pronunció el Tribunal Supremo federal en *Gregory v. Ashcroft*, *supra*, pág. 473. La clasificación puede bien estar basada en una generalización como esta, pues, aunque muchos de nuestros jueces y juezas conservan amplia habilidad y eficiencia pasada esa edad, el límite establecido no está tan poco relacionado al logro de su propósito como para concluir que la disposición sea irracional. *Gregory v. Ashcroft*, *supra*.

Naturalmente, la parte peticionaria se opone a esa valoración. Primero, a su juicio, el caso *Gregory v. Ashcroft*, *supra*, es distinguible porque se trató de la impugnación de la constitución de un estado de la Unión, mientras que Puerto Rico, por su condición de territorio, no ostenta la misma soberanía. Segundo, por esa línea, advierte que el caso *Commonwealth v. Sánchez Valle*, *supra*, subrayó esa falta de soberanía al concluir que, para efectos de la doble exposición en la esfera penal, el poder soberano de Puerto Rico emanaba del gobierno federal de los Estados Unidos. Tercero, argumenta que la aprobación de la ley

federal PROMESA y los planes de ajuste promovidos por la Junta de Supervisión Fiscal hizo inoficiosa la parte del Artículo V, Sección 10 de la Constitución de Puerto Rico que mandata un sistema de retiro para los jueces y juezas. Por eso, arguye que procede dejar sin efecto el resto de la Sección e invalidar la edad de retiro obligatorio para estos funcionarios.

No deben persuadirnos esos argumentos. Por un lado, la sabiduría de *Gregory v. Ashcroft*, *supra*, no radica en el carácter de estado de Missouri, si bien resultó significativo que el más alto foro federal reafirmara que los estados retienen su poder de establecer requisitos de edad a sus funcionarios por virtud de la Décima Enmienda de la Constitución de Estados Unidos. Por el contrario, la importancia se sitúa en el análisis de una disposición de este tipo a la luz de la igual protección de las leyes garantizada por la Decimocuarta Enmienda y la protección contra el discrimen por razón de edad en el empleo según la ley federal ADEA.

Por otro lado, no concibo que, pese a sus importantes efectos en nuestra jurisdicción, el caso *Commonwealth v. Sánchez Valle*, *supra*, y los planes fiscales y de ajuste aprobados en virtud de la ley federal PROMESA hayan tenido el efecto de afectar la aplicabilidad de la norma objeto de análisis, en la manera en que invoca la parte peticionaria. En *Commonwealth v. Sánchez Valle*, *supra*, el

Tribunal Supremo federal hizo un análisis de la fuente de soberanía para encausar criminalmente en Puerto Rico, todo ello en el ámbito de la doble exposición penal. Ciertamente, ese alto foro resolvió que, por provenir de la misma fuente que el poder federal, el gobierno federal y el local no podían encausar de forma sucesiva a una persona por la misma conducta bajo leyes penales equivalentes. En ese sentido, sabido es que tras la adopción de su Constitución, Puerto Rico no dejó de ser un territorio de Estados Unidos sujeto al poder del Congreso, según lo dispone la cláusula territorial de la Constitución Federal. Precisamente, la ejecución y vigencia del límite de edad impugnado, se deriva de la delegación que efectuó el Congreso de Estados Unidos. El alcance de esa cláusula no ha sido trastocado por motivo del ejercicio del Congreso de sus poderes sobre el territorio de Puerto Rico. Véase *Pueblo v. Sánchez Valle*, 192 DPR 594 (2015).

Ante esa realidad, el objetivo de la ley federal PROMESA y las acciones de la Junta de Supervisión Fiscal se enfocan primordialmente en controlar el gasto público, reestructurar la deuda y balancear el presupuesto, no en alterar el ordenamiento sustantivo del Poder Judicial según se estableció en la Constitución de Puerto Rico.

De similar manera, no existen argumentos convincentes en derecho que deban motivarnos a dejar sin efecto la totalidad del Artículo V, Sección 10 por el efecto que han

tenido las medidas de austeridad sobre el sistema de retiro de jueces.[15] Según la parte peticionaria, ambas porciones del Artículo V, Sección 10 de la Constitución de Puerto Rico —el sistema de retiro y la edad de retiro— estaban tan imbricadas que dejar sin efecto la primera parte debe llevarnos a invalidar la segunda. Como es evidente, no coincido con esa apreciación, pues la aprobación de la totalidad de esa Sección apunta a lo contrario.[16] Igualmente, no hay norma de hermenéutica jurídica o constitucional que nos obligue a tomar tan drástica decisión como la que solicita la parte peticionaria de invalidar la totalidad del Artículo V, Sección 10 de la Constitución de Puerto Rico.

---

[15] No debe pasarse por alto que la Convención Constituyente contó con la recomendación de la Escuela de Administración Pública de la UPR de establecer un retiro obligatorio, pero que examinó la necesidad de un adecuado plan de pensiones como un imperativo en caso de que se optara por un sistema de retiro voluntario. Escuela de Administración Pública de la UPR, *op. cit.*, pág. 493. Esto, pues sin ello se podría incentivar que un juez o una jueza se retire demasiado temprano para dedicarse a algo más lucrativo o, por el contrario, se aferre al puesto cuando hayan transcurrido sus años de mayor producción económica. Íd.

**Ese no fue el camino tomado por los delegados y la delegada de la Convención Constituyente.** Incluso, al acogerse el retiro obligatorio, se podría decir que se adoptó la recomendación que, según la Escuela de Administración Pública de la UPR, resolvía la cuestión de sugerir el retiro a jueces y juezas que se resisten a abandonar sus puestos al fijar un límite máximo de edad. Íd., pág. 494.

[16] Véase la nota anterior.

III

Por todo ello, aunque estoy conforme con el resultado de declarar no ha lugar el recurso presentado por la parte peticionaria, no estoy de acuerdo con los fundamentos en los que se basaron los foros inferiores para desestimar la reclamación. En consecuencia, consigno las razones que justifican la validez del Artículo V, Sección 10 de la Constitución de Puerto Rico. De este modo, espero contribuir a impartirle certeza a nuestro ordenamiento constitucional en esta materia.

Luis F. Estrella Martínez
Juez Asociado